# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-SA-01353-SCT

*RICHARD A. CHUNN*

*v.*

*STATE OF MISSISSIPPI, EX REL. MISSISSIPPI*
*DEPARTMENT OF INSURANCE*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/05/2013 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN, JR. |
| TRIAL COURT ATTORNEYS: | WILLIAM ANDY SUMRALL |
| | MARK LAMPTON |
| | BRANDON LEE WHITE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM ANDY SUMRALL |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARK IVAH LAMPTON |
| | BRANDON LEE WHITE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 01/22/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Thirty-three years ago in Texas, Richard Chunn pleaded guilty to possessing marijuana. That conviction did not prevent him from pursuing his twenty-plus-year career as a licensed bail-bond agent. Then, in 2011, the Legislature amended Section 83-39-3 of the Mississippi Code by adding a provision that prohibits all felons—regardless of the nature and dates of the offenses—from obtaining or renewing a bail-agent license. When the Mississippi Department of Insurance refused to renew his license, Chunn challenged the

constitutionality of the statute by appealing to the Hinds County Circuit Court, which affirmed. Because the statute violates the Equal Protection Clause of the Fourteenth Amendment, we reverse and render.

## FACTS AND PROCEDURAL HISTORY

¶2. In 1981, Richard Chunn pleaded guilty in Texas to possession of marijuana. Thereafter, and for the past thirty-three years, he has committed no other violations of the law. For the past twenty years, Chunn has worked as a licensed bail agent. Then the Legislature changed the law in July 2011 so that no felon—regardless of the nature of the felony or how long ago it was committed—may hold a bail-agent license.[1]

¶3. In August 2011, Chunn applied to renew his license with the Mississippi Department of Insurance. As a result of this change in the law, the Department refused to renew his license.[2] He appealed and the Circuit Court of Hinds County affirmed. Chunn now appeals to this Court, challenging the constitutionality of the statute.

## ANALYSIS

¶4. Chunn contends that the law unconstitutionally deprived him of his license to work as a bail agent. We agree. The State has failed to articulate any rational basis for precluding *all* felons—regardless of the nature or age of the felony—from holding bail-agent licenses. Accordingly, the licensing requirement violates the Equal Protection Clause of the

---

[1] Miss. Code Ann. § 83-39-2(2) (Rev. 2011).

[2] We stop to note that under Mississippi law, Chunn's possession of four ounces of marijuana could have been charged as either a misdemeanor or a felony. Miss. Code Ann. § 41-29-139(c)(2)(C) (Rev. 2013).

2

Fourteenth Amendment to the United States Constitution. We reverse the decisions of the Hinds County Circuit Court and the Mississippi Department of Insurance.

¶5. The Fourteenth Amendment to the Constitution of the United States provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."[3] This promise "must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons."[4] So, "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end."[5] Because neither a fundamental right nor a suspect class is involved in this case,[6] the question is whether the law "bears a rational relation to some legitimate end"[7] or advances "a legitimate government interest."[8] While few laws have trouble surviving this lenient test, the one before us today does not.

¶6. Before proceeding with this analysis, we pause to point out that the issue is not whether the State has a legitimate interest in prohibiting *some* felons from engaging in this profession. Rather, the question is whether the State has, in this case and as applied to Chunn, articulated a legitimate governmental interest for prohibiting a person whose only

---

[3] U.S. Const. amend. XIV, § 1.

[4] *Roper v. Evans*, 517 U.S. 620, 631, 116 S. Ct. 1620, 134 L. Ed. 2d 855 (1996).

[5] *Id.*

[6] *See* *Smith v. Fussenich*, 440 F. Supp. 1077, 1080 (D. Conn. 1977)

[7] *Roper*, 517 U.S. at 631.

[8] *Id.* at 632.

3

crime was thirty years ago, for possession of marijuana—which, interestingly, is now legal in numerous states for medical purposes, and in four states for recreational use.

¶7.     It is undisputed that the law in question denies *all felons*—regardless of the nature and age of the crime, and regardless of their record and conduct following the crime—the opportunity ever to obtain a bail-agent license.[9]  Because Chunn challenged the statute's constitutionality, the State was required to provide its legitimate governmental interest.[10]  It has failed to do so.  The State's only effort to describe a rational basis for the law was to say:

> By virtue of a felony conviction, a person does lose some of the trust of society. The Mississippi Legislature, in all its wisdom, decided to protect the bail agent process, which is an important part of the judicial process, by restricting from its practice persons who have been convicted of a felony crime.

¶8.     This rationale utterly fails.   The reasoning that supports the government's purpose—lack of trust—may apply to some felonies.  For example, a conviction for embezzlement certainly calls into question the offender's trustworthiness.[11]  But the statute's broad reach includes many felonies that bear no relationship to trustworthiness.  For instance, a person convicted of manslaughter for overloading a boat could not, under the statute in question, serve as a bail agent.[12]

¶9.     We do not stand alone in our views on this issue.  Other courts have struck down similar laws, finding they violate the Equal Protection Clause.  For instance, in ***Smith v.***

---

[9] Miss. Code Ann. § 83-39-3(2)(a) (Rev. 2011).

[10] *See **Dillard v. Musgrove**, 828 So. 2d 261, 264 (Miss. 2003).

[11] Miss. Code Ann. § 97-23-19 (Rev. 2014).

[12] Miss. Code Ann. § 97-3-41 (Rev. 2014).

*Fussenich*, the plaintiff filed an equal-protection challenge to a Connecticut statute that barred all felony offenders from obtaining licenses as private detectives or security guards.[13] The court employed a rational-basis review to analyze the statute's constitutionality.[14] The court noted that the state essentially contended that "there is an irrebuttable presumption that convicted felons cannot be relied on to exercise traits of honesty, fidelity, integrity and obedience to the law in the performance of their duties as guards and investigators."[15] The court soundly rejected that reasoning:

> The legislation fails to recognize the obvious differences in the fitness and character of those persons with felony records. Felony crimes such as bigamy and income tax evasion have virtually no relevance to an individual's performance as a private detective or security guard.[16]

¶10. Likewise, in *Furst v. New York City Transit Authority*, a city transit worker who pleaded guilty to second-degree attempted manslaughter claimed that his termination under a transit authority policy requiring dismissal of all employees convicted of felonies violated the Equal Protection Clause.[17] The court, applying a rational-basis review, found that the policy failed to satisfy rational-basis scrutiny because "a municipal employer must

---

[13] *Smith*, 440 F. Supp. at 1078-79.

[14] *Id.* at 1080.

[15] *Id.*

[16] *Id.*

[17] *Furst v. New York City Transit Auth.*, 631 F. Supp. 1331, 1332 (E.D.N.Y. 1986).

demonstrate some relationship between the commission of a particular felony and the inability to adequately perform a particular job."[18]

¶11. In still another example, a California federal court struck down a similar provision contained in a city charter, which precluded the employment of convicted felons by the city.[19] The judge found that the policy violated Equal Protection:

> Employment is denied to individuals, like plaintiff, who were convicted of felonies bearing no relationship whatsoever to the individual's honesty or his ability to work. Thus, whereas a felony tax evader is denied a janitorship, a person with a known proclivity for violence or thievery, even a person actually convicted of misdemeanor assault or theft, is not automatically precluded from the job although his personal traits and even his previous misdemeanor convictions might reasonably be considered related to the opportunities and temptations presented by a janitorship. The distinction thus drawn between ex-felons and nonfelons is not rationally related to any legitimate state interests.[20]

¶12. An Iowa court reached a similar conclusion in ***Butts v. Nichols***.[21] There, the court addressed the municipality's contention "that municipal employees occupy a position of special trust, and since convicted felons have displayed their disregard for their fellow citizens, they should not be placed in a position to disregard the rights of their fellow citizens again."[22] The court concluded:

> There is no doubt that the State could logically prohibit and refuse employment in certain positions where the felony conviction would directly

---

[18] ***Id.*** at 1336-38.

[19] ***Kindem v. City of Alameda***, 502 F. Supp. 1108, 1110 (N.D. Cal. 1980).

[20] ***Id.*** at 1112.

[21] ***Butts v. Nichols***, 381 F. Supp. 573, 574 (S.D. Iowa 1974).

[22] ***Id.*** at 579-80.

6

reflect on the felon's qualifications for the job (e.g., conviction of embezzlement and a job requiring the handling of large sums of money). The Iowa statutory scheme, however, has an across-the-board prohibition against the employment of felons in civil service positions. There is simply no tailoring in an effort to limit these statutes to conform to what might be legitimate state interests.[23]

¶13. Finally, in *Thompson v. Gallagher*, a custodian at a city diesel plant challenged his termination under a city ordinance that precluded from city employment any person with a less-than-honorable discharge from the armed forces.[24] The United States Court of Appeals for the Fifth Circuit found that the ordinance implicated neither a fundamental right nor a suspect class, so it performed a rational-basis review.[25] The city had articulated its rational basis for the law as follows:

> Certainly, the fact that a person does not get an honorable discharge from the armed forces conotes [sic], if not criminality, at least antisocial character. The City undoubtedly has an interest in not hiring persons with such character . . . . it cannot be gainsaid that the exclusion of persons with criminal and/or strongly antisocial character will not, in the long run, operate to create a better serving, more efficient and more reliable service.[26]

¶14. But the court found that "[n]umerous factors which have absolutely no relationship to one's ability to work as a custodian in a power plant may lead to other than honorable discharges from the military . . . ."[27] The court held that "a general category of 'persons with other than honorable discharges' is too broad to be called 'reasonable' when it leads to

---

[23] *Id.* at 580.

[24] *Thompson v. Gallagher*, 489 F. 2d 443, 445 (5th Cir. 1973).

[25] *Id.* at 447.

[26] *Id.* at 448.

[27] *Id.* at 449.

automatic dismissal from any form of municipal employment."[28]  Finding an equal-protection violation, the court held that "the ordinance which bars that class of persons from city employment, without any consideration of the merits of each individual case" was irrational.[29]

¶15.    As the Connecticut court said in *Smith*:

> the statute's across-the-board disqualification fails to consider probable and realistic circumstances in a felon's life, including the likelihood of rehabilitation, age at the time of conviction, and other mitigating circumstances related to the nature of the crime and degree of participation. We believe it is fair to assume that many qualified ex-felons are being deprived of employment due to the broad sweep of the statute.[30]

The State has provided a single line of explanation of the State's rational basis for a law that prevents Chunn—whose only crime was possession of marijuana, thirty-three years ago—from continuing to work as a bail agent.  Every felony—no matter its nature or how long ago it was committed—qualifies under this broad-brush statute.  A person's God-given, constitutional liberty to engage in a profession should not so easily be extinguished by the government.

¶16.    Chunn—who has possessed a bail-agent license for twenty years—is one of the "many qualified ex-felons . . . being deprived of employment due to the broad sweep of the statute" referenced in *Smith*.  Because the statute fails to account for the differences in particular felonies and the relationship between particular felonies and fitness to hold a bail-agent

---

[28] *Id.*

[29] *Id.*

[30] *Smith*, 440 F. Supp. at 1080.

license; and because it has no time limits for when the felony was committed, we must conclude that the statute, as applied to Chunn, violates the Equal Protection Clause.

¶17.    In addition to Section 89-39-2, the Insurance Commission denied Chunn's renewal because he failed to disclose his felony conviction in 1990 and 1991 renewal applications. While Section 83-39-15 of the Mississippi Code specifically allows the Commission to refuse to renew a license based on misrepresentations made in obtaining a license, it specifically limits that power to misrepresentations that are material.[31]  And while Chunn's misrepresentations arguably were material to the 1990 and 1991 renewal decisions, they certainly are not relevant to applications submitted over a decade later.  This is particularly true because the Commission has failed to show that, during his twenty-year tenure as a bail agent, Chunn has committed even the slightest violation of his responsibilities.  So Chunn's failure to disclose the conviction in 1990 or 1991 was not material to his current application and cannot justify denying Chunn a renewal of his license.

## CONCLUSION

¶18.    Because Section 89-39-2(2) lacks any rational basis as applied to Richard Chunn, we find that it violates the Equal Protection Clause of the Fourteenth Amendment.  Chunn cannot be denied a bail-agent license based on such a broad-brush statute.

¶19.    **REVERSED AND RENDERED.**

**LAMAR, KITCHENS, PIERCE AND COLEMAN, JJ., CONCUR. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., RANDOLPH, P.J., AND KING, J.**

---

[31] Miss. Code Ann. § 83-39-15(c) (Rev. 2011).

**CHANDLER, JUSTICE, DISSENTING:**

¶20.     I respectfully dissent. I would find that this statute passes the rational-basis test. Mississippi's law is similar to laws found in other states, and such laws consistently have been upheld. While I agree with the majority that laws placing unqualified restrictions on felons should be reviewed carefully for equal-protection concerns, this law concerns a privilege license intimately associated with the workings of the criminal justice system. I cannot find that restricting felons from accessing this privilege is not rationally related to a legitimate government interest.

¶21.     The majority is unable to cite a case that specifically strikes down an unqualified restriction on a felon's ability to obtain a bail-bond license. Restrictions on a felon's ability to obtain a bail-bond license are common nationwide and are consistently upheld. For example, in Texas, similar to Mississippi, anyone convicted of any felony[32] is ineligible for a bail-bond license, as well as anyone convicted of a misdemeanor involving moral turpitude. *Smith v. Tarrant Cnty. Bail Bond Bd.*, 997 S.W. 2d 870, 874 (Tex. App. 1999). Upholding newly tightened restrictions on a felon's ability to obtain or renew a bail-bond license, the Colorado Supreme Court rejected the argument that the existence of more reasonable exceptions rendered the law unconstitutional, stating:

> [T]he fact that such exemptions were enacted at one time does not compel the conclusion that a licensing act is invalid if the exemptions are eliminated. The mere failure of a governmental regulation to allow all possible and reasonable exceptions to its application is not sufficient to render the regulation unconstitutional. The General Assembly has broad discretion to fashion a licensing scheme that, in its view, protects the public health, safety, welfare,

---

[32] This is regardless of whether the felony involves moral turpitude.

10

and morals, and we do not sit as a "super legislature" to weight the propriety of that legislation.

*Ficarra v. Dep't of Regulatory Agencies, Div. Of Ins.*, 849 P. 2d 6, 22 (Colo. 1993). That court also described the legitimacy of restrictions on felons as bail-bond agents as related to numerous governmental interests:

> The bail bond business is intimately involved in the process of determining who in the criminal justice system will be released pending trial and who will remain incarcerated. Professional bail bondsmen must be prepared to handle valuable collateral, and to encourage within the bounds of the law the appearance at trial of persons accused (and sometimes previously convicted) of serious crimes. The importance to the public of the safe and honest performance of these activities can hardly be overemphasized, and thus the bail bond business is without question a matter of substantial public concern subject to reasonably regulation under the police power of the State.

*Id*. (citations omitted).

¶22.   The rationale of these restrictions also is seen in the numerous laws–including Mississippi's–prohibiting bond  agents from employing felons. *Davis-Everett v. Dale*, 926 So. 2d 279, 282 (Miss. Ct. App. 2006);  *Ramirez v. State*, 113 So. 3d 28, 30 (Fla. Dist. Ct. App. 2012).

¶23.   I also disagree with the majority's position that Chunn's failure to disclose his felony on his initial bail-bond application is immaterial to his subsequent applications.  Mississippi Code Section 83-39-15 (1)(c) establishes that material misstatement, misrepresentation, or fraud in obtaining the license creates grounds for denial, suspension, revocation, and refusal to renew a license. Chunn would not have been granted his initial license if he had disclosed that he had a felony within the past ten years of that application, and his subsequent licenses were granted under a grandfather clause that a convicted felon could not be granted a license

11

"unless presently licensed for bail bonds." That "present license" was granted based on a misrepresentation.

¶24. I do not deny that the Legislature's unqualified restriction may result in unfair consequences. However, this is not grounds for finding that a statute fails the rational-basis standard of review. Mississippi currently has numerous laws placing restrictions on felons in various contexts. Sympathetic as Chunn's individual situation is in this particular case, I do not know that this Court wants to create such broad grounds for striking down restrictions under the rational-basis standard of review. The Legislature is free to enact a more sophisticated version of the statute if it wishes to enable felons in Chunn's position to obtain a privilege license so closely related to the workings of our criminal justice system. For all of these reasons, I respectfully dissent.

**WALLER, C.J., RANDOLPH, P.J., AND KING, J., JOIN THIS OPINION**.